**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

LOGAN CARBONE and LAURA      )
STANGER, individually and on behalf of  )
others similarly situated,             )
                                    )
            Plaintiffs,           )
                                    )      No. 2:16-cv-0108-DCN
           vs.               )
                                    )      **ORDER**
ZEN 333 INC., d/b/a ZEN ASIAN FUSION, )
CHEN ZHOU, a/k/a CINDY ALFREDSON,  )
RONG A. ZHOU, and MEI ZHENG,      )
                                      )
           Defendants.       )
_____ )

      The following matters are before the court on plaintiffs Logan Carbone

("Carbone") and Laura Stanger's ("Stangler," together with Carbone, "plaintiffs")

motion for conditional class certification, ECF No. 23, and defendants Zen 333 Inc.,

d/b/a Zen Asian Fusion, Chen Zhou, a/k/a Cindy Alfredson, Rong A. Zhou, and Mei

Zheng's ("defendants") motion to dismiss, ECF No. 32. For the reasons set forth

below, the court grants in part and denies in part defendants' motion to dismiss, and

grants plaintiffs' motion for conditional class certification.

## I.  BACKGROUND[1]

      Plaintiffs were employed by defendant Zen 333 Inc., which operates an Asian

cuisine restaurant known as Zen Asian Fusion in Charleston, South Carolina (the

"Restaurant"). ECF No. 26, Second Am. Compl. ¶ 19. Carbone worked as a server

and bartender at the Restaurant from July 2014 to February 2016. Id. ¶¶ 23, 27.

---

[1] The following facts are taken from plaintiffs' second amended complaint
and are presented in the light most favorable to the plaintiffs.

Stangler worked primarily as a server at the Restaurant from January 2014 to February 2016.  Id. ¶¶ 24, 28.  Defendants Chen Zhou a/k/a Cindy Alfredson ("Chen"), Rhon Zhou ("Rhon"), and Mei Zheng ("Mei") were each owners and managers of the Restaurant, and each had control over finances and operations of the restaurant, including the power to hire, fire, manage, and set compensation for employees.  Id. ¶¶ 20–22.

Plaintiffs and other similarly situated servers and bartenders were compensated pursuant to an employment agreement whereby defendants paid $40.00 plus tips for all shifts worked as bartenders, and $2.25 an hour for all hours worked plus tips for shifts worked as servers.  Id. ¶ 25.  In order to meet the statutory minimum wage requirement of the Fair Labor Standards Act 29 U.S.C. § 201, et seq. ("FLSA"), defendants applied a "tip credit" equal to the difference in the FLSA's statutory minimum wage of $7.25 per hour and the hourly compensation[2] plaintiffs received directly from defendants.  Id. ¶¶ 29–31.

However, plaintiffs and other similarly situated employees were not entitled to take their tips directly from customers.  Instead, bartenders and servers were required to contribute their tips to a mandatory "tip pool," pursuant to which:  (1) servers were required to contribute an undisclosed amount, which was calculated by defendants, to the busboys; (2) servers were required to contribute 4.5% of their gross food and alcohol sales directly to "the house," i.e. defendants; (3) servers were required to

_____

[2] For shifts worked as servers, defendants compensated plaintiffs at a rate of $2.25 per hour, so the tip credit was simply $5.00 per hour.  Second Am. Compl. ¶ 30.  For shifts worked as bartenders, defendants paid a fixed sum of $40 for the entire shift, meaning the hourly rate of compensation received from defendants varied based on the amount of hours worked during a particular shift and, consequently, the hourly amount of the tip credit also varied.  Id. ¶ 31.

contribute 3.5% of their alcohol sales to the bartenders; and (4) bartenders were required to contribute an undisclosed percentage of their alcohol sales to "the house."[3]  Id. ¶ 36.  Defendants never informed plaintiffs and other similarly situated employees of the amount of tip pool contributions they would be required to make.  Id. ¶ 35.  Defendants first deducted each employee's mandatory tip pool contributions from the employee's cash tips. Id. ¶ 37.  If an employee's cash tips did not cover the amount they owed to the tip pool, defendants would take the difference from the employee's credit card tips.  Id.  Employee tip pool contributions were then deposited into a general operating account, which was used to pay hourly wages to non-tipped employees.  Id. ¶ 38.

Defendants enforced this tip pool arrangement by withholding all tips until the end of each week, when defendants issued each employee a handwritten check containing their cash and credit card tips minus the tip pool deductions.  Id.  ¶ 52.  Notably, the amounts plaintiffs and other similarly situated employees actually received in their weekly checks were often less than that amount defendants reported on the employees' bi-weekly pay stubs and W-2 tax forms.  Id. ¶¶  55–57.  As a result of this over-reporting, plaintiffs allege that they were required to pay taxes on tips they never received.  Id. ¶ 58.

Carbone filed the instant action on January 12, 2016.  ECF No. 1.  On July 13, 2016, plaintiffs filed a motion for conditional class certification.  ECF No. 23.  On July 15, 2016, plaintiffs filed a second amended complaint, bringing individual and

---

[3] Plaintiffs point out that because both servers and bartenders were required to pay percentages of the same alcohol sales to "the house," the defendants were effectively "double dipping" in the alcohol sales.  Second Am. Compl. ¶ 36.

class claims for violation of the FLSA's minimum wage and unpaid overtime provisions, unpaid wages under the South Carolina Payment of Wages Act, S.C. Code § 41-10-10, et. seq. ("SCPWA"), and violations of Internal Revenue Code ("IRC") 29 U.S.C. § 7434, as well as an individual claim for retaliation under the FLSA. Second Am. Compl. ¶¶ 70–117. On August 1, 2016, defendants filed a motion to dismiss plaintiffs' SCPWA and IRC claims. ECF No. 32. Defendants responded to the motion for conditional certification on August 19, 2016, ECF No. 35, and plaintiffs responded to the motion to dismiss on August 26, 2016. ECF No. 37. Defendants filed a reply in support of the motion to dismiss on September 6, 2016, ECF No. 39, and plaintiffs filed a reply in support of their motion for conditional certification on September 15, 2016. ECF No. 40. The matters are now ripe for the court's review.

## II.  STANDARDS

### A.    Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must "accept[] all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. A complaint must contain

sufficient factual allegations in addition to legal conclusions.  Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "Facts pled that are 'merely consistent with' liability are not sufficient."  A Soc'y Without a Name v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 678).

**B.      Motion for Conditional Certification**

Under § 216(b) of the FLSA, plaintiffs may institute a collective action against their employer on behalf of themselves and other similarly situated employees.  The collective action procedures of § 216(b) require similarly situated employees to give their consent before joining a collective action.  Id.  "In order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'"  Purdham v. Fairfax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989)).  To obtain the benefits of this court-approved notice procedure, plaintiffs must demonstrate that the proposed class members are "similarly situated" and that notice is "appropriate."  Id. at 548.  Notice is "appropriate" where the proposed class members' claims "share common underlying facts and do not require substantial individualized determinations for each class

member." Id.; MacGregor v. Farmers Ins. Exch., No. 2:10-cv-03088, 2012 WL

2974679, at *2 (D.S.C. July 20, 2012).  Ordinarily, the plaintiff's burden at the

conditional certification stage is fairly lenient, requiring only a modest factual

showing that members of the proposed class are "victims of a common policy or plan

that violated the law."  Purdham, 629 F. Supp. 2d at 547–48; Regan v. City of

Charleston, S.C., No. 2:13-cv-3046, 2014 WL 3530135, at *2 (D.S.C. July 16, 2014)

reconsideration denied, 40 F. Supp. 3d 698 (D.S.C. 2014); Essame v. SSC Laurel

Operating Co. LLC, 847 F. Supp. 2d 821, 824–25 (D. Md. 2012).

### III.   DISCUSSION

Plaintiffs' motion for conditional certification arises under § 216 of the FLSA

and necessarily pertains only to plaintiffs' minimum wage and overtime claims.

Meanwhile, defendants' motion to dismiss only relates to plaintiffs' SCPWA and IRC

claims.  Thus, the two motions do not overlap.  The court begins by addressing the

motion to dismiss and then turns to the motion for conditional certification.

**A.    Motion to Dismiss**

**1.    SCPWA Claim**

Plaintiffs allege that defendants unlawfully withheld wages owed to plaintiffs

and other similarly situated employees by forcing them to contribute to the mandatory

tip pool.  Second Am. Compl. ¶¶ 78–97.  Defendants argue that the SCPWA claim

must fail because:  (1) tips are not considered "wages" under the SCPWA; (2) the

SCPWA claim is dependent on finding a violation of the FLSA and therefore

preempted; and (3) plaintiffs failed to plead sufficient facts to meet the "plausibility"

standard under Twombly and Iqbal.  Defs.' Mot. 8–20.

Pursuant to S.C. Code § 41-10-40(C),

> An employer shall not withhold or divert any portion of an employee's wages unless the employer is required or permitted to do so by state or federal law or the employer has given written notification to the employee of the amount and terms of the deductions . . . .

The SCPWA defines "wages" as

> all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract. Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.

S.C. Code § 41-10-10.

"The primary purpose in interpreting statutes is to ascertain the intent of the [l]egislature." Cain v. Nationwide Prop. & Cas. Ins. Co., 661 S.E.2d 349, 351 (S.C. 2008). In assessing the legislature's intent, the court must first look to the plain meaning of the statutory language. Id. at 352 ("The statute's language is considered the best evidence of legislative intent."); State v. Jacobs, 713 S.E.2d 621, 622 (S.C. 2011) ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (quoting Hodges v. Rainey, 533 S.E.2d 578, 581 (S.C. 2000))).

Tips are given as compensation for labor, and thus, plainly fall within the scope of the phrase "all amounts at which labor rendered is recompensed." S.C. Code § 41-10-10 (emphasis added). There is nothing in the statutory definition stating a "wage" must come from an employer. Indeed, the word "all" indicates just the opposite. The language following this descriptive definition underscores this point by making it clear the definition does not require wages to "calculated" in any particular

way.  See id. (clarifying that wages include fixed amounts or amounts "ascertained on a time, task, piece, or commission basis, or other method of calculating the amount."). Moreover, if the legislature had intended to exclude tips from this broad definition, one would think they would have done so explicitly in the exclusionary language at the end of the definition.  Id. ("Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.").  Thus, a straightforward reading of the statute indicates that tips are considered wages under the SCPWA.

If the plain language were not enough, plaintiffs' reading of § 41-10-10 also comports with the statute's remedial purpose.  Courts have repeatedly recognized that the purpose of the SCPWA is to protect employees' ability to collect compensation owed for their labor.  Weaver v. John Lucas Tree Expert Co., No. 2:13-cv-01698, 2013 WL 5587854, at *9 (D.S.C. Oct. 10, 2013) ("The South Carolina Supreme Court has noted on multiple occasions that "the purpose of the [SCPWA] is to protect employees from the unjustified and willful retention of wages by the employer." (alteration in original) (quoting Mathis v. Brown & Brown of S.C., Inc., 698 S.E.2d 773, 783 (S.C. 2010))).  Another court in this district has already found that this remedial purpose would be served by including tips in the statutory definition of "wages."  Gardner v. Country Club, Inc., No. 4:13-cv-03399, 2016 WL 3125469, at *5 (D.S.C. June 3, 2016) ("In light of the established purpose of the SCPWA and the analogous case law from other jurisdictions, the Court finds that tips meet the definition of wages under the SCPWA."); Degidio v. Crazy Horse Saloon & Rest., Inc., No. 4:13-cv-02136, 2016 WL 3125467, at *5 (D.S.C. June 3, 2016) (same). This court agrees.  Defendants argue that, as employers, they had no involvement in

the tip transaction,[4] Defs.' Mot. 5, but this is no reason for excluding tips from the definition of wages under the SCPWA. Under defendants' theory, employers would be permitted to frustrate their employees' ability to collect compensation for their labor, so long as that compensation was provided by a third-party. Such a result is clearly contrary to the statute's remedial purpose. Therefore, the court concludes that tips are "wages" under the SCPWA.

Defendants next argue that plaintiffs' SCPWA claim is preempted because it turns on a finding that the defendants violated the FLSA. Defs.' Mot. 8–20. Defendants essentially contend that (1) because plaintiffs' SCPWA claim arises under S.C. Code § 41-10-10(C) and (2) because establishing a violation of § 41-10-40(C) requires establishing a violation of the FLSA, (3) plaintiffs' claim is preempted pursuant to Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir 2007). Defs.' Mot. 8–20.

In Anderson, the Fourth Circuit found that "Congress prescribed exclusive remedies in the FLSA for violations of its mandates." 508 F.3d at 194. Invoking the doctrine of "obstacle preemption," the court held that plaintiffs may not avail themselves of state law remedies to protect rights that are merely duplicative of the rights guaranteed under the FLSA. Id. The court reasoned that, because Congress intended the FLSA's remedies to be exclusive, allowing plaintiffs to bring duplicative

---

[4] Even if an employer's involvement in the tip transaction were relevant to the inquiry, the court would find defendants' argument unconvincing. Tips are an integral part of many employees' overall compensation, and thus, an integral part of such employees' relationship with their employers. In this case, defendants allow their employees to collect tips in lieu of greater direct compensation. Thus, defendants can be said to compensate their employees through the practice of allowing the employees to retain tips.

state law claims would "'stand[] as an obstacle to the accomplishment of the full

purposes and objectives of' the FLSA." Id. at 193 (quoting Worm v. Am. Cyanamid

Co., 970 F.2d 1301, 1305 (4th Cir. 1992)).

As set forth above, plaintiffs SCPWA claim alleges a violation of § 41-10-

40(C), which provides that

> [a]n employer shall not withhold or divert any portion of an
> employee's wages unless the employer is required or permitted to do
> so by state or federal law or the employer has given written
> notification to the employee of the amount and terms of the deductions
> . . . .

Defendants seize on the phrase "unless the employer is required or permitted to do so

by state or federal law," to argue that proving a violation of § 40-10-40(C) requires

proving a violation of the FLSA. Defs.' Mot. 11. Defendants' argument appears to

be premised on a flawed interpretation of the word "permitted." To say that a

violation of § 41-10-40(C) requires a violation of the FLSA, the word "permitted"

must be interpreted to simply mean "not prohibited," as opposed to "affirmatively

authorized." Under defendants' reading, unless there is some federal or state law

prohibiting an employer from withholding an employee's wages, there is no § 41-10-

40(C) violation. Thus, defendants argue, plaintiffs must first prove a violation of

some other federal or state law to prove a violation of § 41-10-40(C).

However, if one reads the word "permitted" to require some positive

expression of authorization or consent, then one may prove a § 41-10-40(C) violation

by showing (1) that the employer withheld the employees' wages and (2) there is no

federal law that provides for such allowance. Under this reading, the court need not

find that the employer violated the FLSA or any other law. It is enough that the

employer's actions were not specifically authorized or required by some other law.

Considering the plain meaning of the word "permitted" in isolation, both interpretations appear plausible.  See PERMIT, Black's Law Dictionary (10th ed. 2014) ("1. To consent to formally; to allow (something) to happen, esp. by an official ruling, decision, or law <permit the inspection to be carried out>. 2. To give opportunity for; to make (something) happen <lax security permitted the escape>. 3. To allow or admit of."); PERMIT, Oxford English Dictionary (3rd ed. 2005) ("1. Permission or liberty, esp. formally granted, to do a particular thing.").  However, when read in the context of § 41-10-40(C), the court finds defendants' reading to be deeply flawed.  In defendants' view, as long as an employer's conduct is not prohibited by some other state or federal law, § 41-10-40(C) has no effect.  Thus, defendants construe § 41-10-40(C) to be a purely derivative measure which simply allows employees harmed by an employer's violation of some other law to obtain damages under the SCPWA.  If the legislature had intended this result, it could have easily made that much clearer.  Defendants' reading also leads to a curious result.  Because § 40-10-40(C) allows an employer to withhold or divert wages if "permitted" by another state or federal law or "the employer has given written notification to the employee of the amount and terms of the deductions," defendants' reading would allow an employer to escape SCPWA sanctions simply because it notified its employee of the fact that it was going to withhold the employee's wages, despite the fact that such conduct violated some other federal or state law.  Why the SCPWA would be constructed to provide its own unique remedies for violations of separate federal and state laws, but only when an employer fails to provide notice of the actions that constitute such violations, the court has no idea.

On the other hand, if one reads the word "permitted" to apply only when another federal or state law explicitly authorizes the withholding or diversion of the an employee's wages, then the effect of § 40-10-40(C) is quite straightforward—it prohibits withholding or diverting wages, except when such actions are taken pursuant to some other federal or state law, or when employers provide proper notice of such actions to their employees. This strikes the court as a much more natural reading of § 40-10-40(C), and better serves the remedial purposes of the act, by generally ensuring that employees receive notice of any withholding or deduction policies that are not authorized by other state and federal laws.

This reading finds further support in three recent decisions in this district. In Meller v. Wings Over Spartanburg, LLC, No. 2:15-cv-2094, 2016 WL 1089382, at *3 (D.S.C. Mar. 21, 2016), the court found that the plaintiffs' claim to recover withheld tips in excess of the minimum wage under the SCPWA was not preempted by the FLSA. The court rested its decision on the fact that the FLSA did not guarantee the substantive rights implicated by such a claim—namely, the plaintiffs' entitlement to their tips in excess of the FLSA's minimum wage. Id. Another court applied similar reasoning in Foster v. M5 Hosp. Grp., LLC, No. 4:14-cv-4517, 2015 WL 5024404, at *5 (D.S.C. Aug. 24, 2015), and Spallone v. SOHO Univ., Inc., No. 4:15-cv-1622, 2015 WL 5098154, at *5 (D.S.C. Aug. 31, 2015), which also rejected motions to dismiss SCPWA claims for improperly withheld tips. See Foster, 2015 WL 5024404, at *5 (finding that "[a] cause of action under the state wage statute is separate and distinct from the FLSA claims" because, unlike the FLSA, that statute "is not limited to controversies involving minimum wage and overtime but applies to all wages due,

and the plaintiff's claim is based on lack of written notice of deductions"); Spallone, 2015 WL 5098154, at *5 (same as Foster).

Defendants argue that these decisions all miss the point. Def.'s Mot. 16–20. Defendants insist that "[t]he relevant fact is not whether the private plaintiffs can recover these tips under the FLSA. Rather, the relevant question is whether the [SPWA] claim is dependent upon proving the employer violated the FLSA."[5] Defs.' Mot. 15. This objection fails, however, because even assuming it is a correct statement of the law, the very fact that the Meller, Foster, and Spallone courts allowed the SCPWA claims for tips to go forward suggests that those courts adopted this court's interpretation of the word "permitted" in § 41-20-40(C). Each of these decisions recognized that the FLSA does not govern tips made in excess of the minimum wage. Meller, 2016 WL 1089382, at *3 (recognizing that "the statutory language [in the FLSA] . . . simply does not contemplate a claim for wages other than minimum or overtime wages" (quoting Trejo, 795 F.3d at 446)); Foster, 2015 WL 5024404, at *5 (recognizing that "[t]he [SCWPA] is broader than the FLSA in that it is not limited to controversies involving minimum wage and overtime"); Spallone, 2015 WL 5098154, at *5 (same as Foster). Thus, the Meller, Foster, and Spallone courts would all doubtlessly concur with defendants' position that the FLSA does not prohibit their withholding and diversion of their employees' wages. And yet, the

---

[5] Although defendants engage in some discussion of whether the FLSA prohibits the pooling of tips that are not used to satisfy the tip credit, they never take a clear position on this issue. ECF No. 32 at 12–13 (noting that Oregon Rest. & Lodging Ass'n v. Perez, 816 F.3d 1080 (9th Cir. 2016), and Brueningsen v. Resort Express Inc., 2016 WL 1181683, at *1 (D. Utah Mar. 25, 2016), reached differing conclusions on the subject). Because defendants have not only failed to thoroughly brief this issue, but actively argue that it is irrelevant to the court's preemption analysis, the court does not address it here.

<u>Meller</u>, <u>Foster</u>, and <u>Spallone</u> courts all allowed the plaintiffs' SCPWA claims to go forward, indicating that they did not read the SCPWA to require proof of an FLSA violation.[6]  Therefore, the court finds that plaintiffs' SCPWA claim is not preempted by the FLSA.

Finally, defendants argue that plaintiffs have failed to sufficiently plead the class action requirements of Federal Rule of Civil Procedure 23.  In support of this argument, defendants simply cite the <u>Twombly</u> and <u>Iqbal</u> pleading standards, and a lone Fifth Circuit case from 1984, where a plaintiff wholly failed "to seek class relief in her complaint, or at any time before or during trial."  <u>Lusted v. San Antonio Indep. Sch. Dist.</u>, 741 F.2d 817, 821 (5th Cir. 1984).  In that case, the plaintiff's suit was "brought as an individual action" and the complaint "neither showed nor alleged that the suit met the prerequisites of a class action as specified by Rule 23."  <u>Id.</u>

Here, plaintiffs second amended complaint specifically prays for class relief and contains allegations addressing the requirements of Rule 23.  Second Am. Compl. ¶¶ 15–17.  Although these allegations contain few facts, courts have recognized that the facts needed to establish class certification are generally not available until discovery has commenced.  <u>Griffin v. Harley Davidson Credit Corp.</u>, No. 8:08-cv-466, 2010 WL 233764, at *1 (D.S.C. Jan. 14, 2010) ("[O]ther district courts in this circuit have concluded that plaintiffs are 'generally entitled to pre-certification discovery to establish the record the court needs to determine whether the

---

[6] The <u>Meller</u> court specifically analyzed the plaintiffs' claim under § 41-10-40(C), and thus, the <u>Meller</u> court can be said to have implicitly rejected defendants' reading of the word "permitted" in this case.  The <u>Foster</u> and <u>Spallone</u> courts analyzed their respective plaintiffs' claims under § 41-10-30, and are therefore, less on point.

requirements for a class action suit have been met.'" (quoting <u>Buchanan v.</u>

<u>Consolidated Stores Corp.</u>, 217 F.R.D. 178, 185 (D. Md. 2003)); <u>Boatwright v.</u>

<u>Walgreen Co.</u>, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("At this procedural

stage, the Court is not equipped with the information needed to conduct the rigorous

analysis required to determine whether Rule 23's requirements have been satisfied.").

For this reason, courts have rejected "preemptive attacks on putative classes" of this

sort.  <u>See</u> <u>Boatwright</u>, 2011 WL 843898, at *3 (collecting cases).  The court will do

the same here.  Therefore, the court finds that plaintiffs have properly pleaded the

class action requirements of Rule 23.

### 2.    IRC Claim

Defendants next attack plaintiffs' IRC claim, which alleges that defendants

fraudulently and intentionally over-reported plaintiffs' earned tips on plaintiffs' pay

stubs and W-2 forms in violation of 26 U.S.C. § 7434(a).  Second Am. Compl.

¶¶ 112–17.  Defendants argue that plaintiffs' IRC claim must be dismissed for two

reasons: (1) plaintiffs failed to plead the requisite fraudulent conduct with

particularity as required by Federal Rule of Civil Procedure 9(b); and (2) plaintiffs

failed to plead facts showing that defendants possessed an "intent to deceive."  Def.'s

Mot. 21–24.

Plaintiffs' based their IRC claim on 26 U.S.C. § 7434(a), which provides that

"[i]f any person willfully files a fraudulent information return with respect to

payments purported to be made to any other person, such other person may bring a

civil action for damages against the person so filing such return."  26 U.S.C. § 7434.

Federal Rule of Civil Procedure 9(b) requires a party alleging "fraud or mistake" to

"state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Though the Fourth Circuit has not determined whether Rule 9(b) applies to a claim under § 7434, the Fourth Circuit has "routinely appl[ied] Rule 9(b) to statutory claims sounding in fraud." See Bolling v. PP&G Inc., 2015 WL 9255330, at *6 (D. Md. Dec. 17, 2015) (collecting cases). The court finds that § 7434 sounds in fraud based on the fact that it requires a plaintiff to prove that the information return was fraudulent. Id. ("The plain language of § 7434 requires plaintiffs to prove the issuance of a fraudulent information return."); see also Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) ("To establish a claim of tax fraud under 26 U.S.C. § 7434, [p]laintiff must prove: (1) Defendants issued an information return; (2) The information return was fraudulent; and (3) Defendants willfully issued a fraudulent information return."). Therefore, Rule 9(b) applies.

Rule 9(b)'s particularity requirement demands that a plaintiff identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297, at 590 (2d ed. 1990)). Rule 9(b) is intended to ensure that defendants have sufficient notice of the conduct complained of, to protect against frivolous suits and suits where all the facts are learned after discovery, and to protect defendants from harm to their goodwill and reputation. Id.

> A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense

at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts.

Id.

Here, plaintiffs have clearly alleged that their pay stubs and W-2 forms overstated the amount of tips they earned. Second Am. Compl. ¶¶ 52–58. This answers the issues of time, place, and contents. The time and place were whenever and wherever plaintiffs were issued pay stubs and W-2 forms, and the contents were the overstated tip amounts. However, plaintiffs have not identified which defendant filed the fraudulent tax forms. Defs.' Mot. 23. Though plaintiffs argue that their pleadings are comparable to the pleadings that were approved in Bolling, it is notable that the plaintiffs in Bolling specified which of the multiple defendants was responsible for the fraudulent filings. 2015 WL 9255330, at *7. The court finds that plaintiffs must plead the same information in this case. However, the court does not believe that this deficiency warrants dismissal with prejudice. It would seem that this error is easily corrected, and whichever defendant's tax filings included the fraudulent statements should be considered the filer. Alternatively, if the plaintiffs consider each defendant to be liable under 26 U.S.C. § 7434(a), they may be able to better explain the facts giving rise to such liability.

Defendants also argue that the facts outlined in plaintiffs' pleadings do not establish fraudulent intent. Defendants rely on Mould v. NJG Food Serv. Inc., 37 F. Supp. 3d 762, 777 (D. Md. 2014), where the court granted summary judgment against a comparable § 7434 claim because the "facts establish[ed] that although [d]efendants may have issued an erroneous W–2 form, they did not do so as a result of 'intentional wrongdoing' or with the 'intent to deceive.'" The Mould court began by observing that "[i]n the tax context, fraud requires 'intentional wrongdoing' and an 'intent to

deceive.'" Id. (quoting Vandenheede v. Vecchio, 541 F. App'x. 577 (6th Cir. 2013)).

Applying this standard, the court found the evidence showed that the defendants' tip income reporting policy was "implemented to ensure that tip income was properly reported to the IRS," and therefore, the defendants did not possess the requisite fraudulent intent.  Id.

Here, the court finds plaintiffs have similarly failed to tie defendants' allegedly false representations to a fraudulent scheme.  It is true that "[t]he second sentence of Rule 9(b) allows conclusory allegations . . . of defendant's intent to deceive," Harrison, 176 F.3d at 784, but the Rule nevertheless requires plaintiffs to allege with particularity "what [defendants] obtained" through their fraudulent statements.[7]  Plaintiffs' second amended complaint does not provide any indication of why defendants over-reported plaintiffs' tip earnings.  Plaintiffs claim to have pleaded that "[d]efendants did so for the purpose of requiring the [p]laintiffs to pay higher taxes."  Pls.' Resp. 18.  Setting aside the question of whether this would be a plausible allegation,[8] the court finds that the allegation simply has not been made. The second amended complaint states that "[a]s a result [of defendants' false statements], the [p]laintiffs had to pay taxes on monies they never received," but this

---

[7] Though defendants argue that plaintiffs failed to properly plead fraudulent intent, the court characterizes the problem as a failure to plead what the defendants' gained from the alleged over-reporting scheme.  While this fact may relate to the plaintiffs' intent, the court notes that it is not the same thing.

[8] The court does not doubt that a defendant's desire to inflict harm on a plaintiff can provide the motive for a fraudulent statement or scheme, but in the context of this case, it seems quite unlikely that defendant harbored such ill intentions towards their employees, especially given that over-reporting tip earnings would seem to harm defendants as well.  Because the court finds that the second amended complaint cannot be read to allege such intent, the court need not determine whether plaintiffs' unlikely malice theory is viable.

does not mean that this result motivated defendants' actions.  Second Am. Compl. ¶ 58.  Another section of the second amended complaint states that defendants engaged in the alleged over-reporting "for tax purposes."  Id. ¶ 113.  While this comes closer to the mark, the court finds that the phrase "tax purposes" is simply not specific enough to meet the particularity requirements of Rule 9(b).  Because plaintiffs have failed to indicate what defendants stood to gain by over-reporting their employees' tip earnings, the court finds that the IRC claim must be dismissed.  Again, this dismissal is without prejudice.  If plaintiffs can determine what defendants might have gained through this alleged over-reporting, they may move to amend their complaint accordingly.

### B.    Conditional Certification

Plaintiffs move for conditional certification of a class consisting of all individuals employed by defendants as servers and bartenders in the three years prior to the date of this court's order.  Pls.' Mot. 11; Pls.' Reply 2 n.2.  Plaintiffs request for conditional certification relates solely to their claim for unpaid minimum wages under the FLSA.  Pls.' Reply 1 n.1.  Plaintiffs contend that their pleadings and the affidavits demonstrate that the proposed class members are all "similarly situated" within the meaning of 29 U.S.C. § 216(b) because they shared the same basic duties of employment, were compensated under the same payment policies, and have FLSA claims which arise from the same or similar actions by taken by defendants.  Pls.' Mot. 6–9.

Defendants do not directly challenge plaintiffs' claim that the proposed class members are similarly situated.  Instead, defendants argue that plaintiffs have not

shown that the putative class members possess sufficient interest in this action to warrant conditional certification.[9]  Defs.' Resp. 4–11.  In support of this argument, defendants highlight Dybach v. State of Fla. Dep't of Corr., 942 F.2d 1562 (11th Cir. 1991), Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159 (D. Minn. 2007), and Pelczynski v. Orange Lake Country Club, Inc., 284 F.R.D. 364 (D.S.C. 2012).  Id. Defendants cite Dybach to show that the Eleventh Circuit has long held that "the district court should satisfy itself that there are other employees of the department-employer who desire to 'opt-in.'"  942 F.2d at 1567.  They offer Parker's reasoning that "a plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit," otherwise the court risks wasting judicial resources by certifying a class that may ultimately include only the plaintiff.  Parker, 492 F. Supp. 2d at 1165.  The Parker court was also convinced that without this requirement, conditional certification would become "automatic, as long as the [c]omplaint contains the magic words:  'Other employees similarly situated.'"  Id. (quoting Smith v. Sovereign Bancorp, Inc., 2003 WL 22701017, at *2 (E.D.Pa. Nov.13, 2003)).  Finally, defendants offer Pelczynski to argue that this "interest requirement" has support in this circuit.  Pelczynski, 284 F.R.D. at 368 (requiring plaintiffs to provide evidence that "other similarly situated individuals desire to opt in…") (quoting Purdham, 629 F. Supp. 2d at 549).

    This court has already analyzed each of these cases in Gordon v. TBC Retail Grp., Inc., 134 F. Supp. 3d 1027 (D.S.C. 2015).  In addressing a similar argument

---

[9] Defendants also raised certain objections to plaintiffs' proposed notice which were resolved by mutual agreement at the hearing.

offered by the defendants in that case, this court recognized that both the <u>Dybach</u> and

<u>Parker</u> decisions have received criticism in this circuit. <u>Id.</u> at 1039 (citing <u>Mancia v.</u>

<u>Mayflower Textile Servs. Co.</u>, 2008 WL 4735344, at *3 n.5 (D.Md. Oct. 14, 2008),

which stated that <u>Dybach</u> "does not create an evidentiary standard binding on this

court," and criticized <u>Parker</u> for construing the FLSA too narrowly). The court

placed special emphasis on the criticism leveled against <u>Parker</u>, explaining that

> Other courts have criticized [<u>Parker</u>'s] position as illogical, since determining whether other plaintiffs wish to join the lawsuit is part of the purpose of certifying the class in the first place. <u>See</u> <u>Helmert v.</u> <u>Butterball</u>, LLC, 2009 WL 5066759, at *5 ("[T]he logic behind defendants' proposed procedure—requiring the plaintiff to show that others want to join in order to send them notice asking if they want to join—escapes the [c]ourt." (quoting <u>Heckler v. DK Funding, LLC</u>, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007))). Courts have also determined that this requirement would effectively force plaintiffs to issue informal notices, or otherwise solicit potential class members on their own, undermining the courts' ability to oversee an orderly and accurate notification process. <u>Id.</u>; <u>see also</u> <u>Hoffmann–La Roche, Inc.</u>, 493 U.S. at 170 (stating that the benefits of a collective action under § 216(b) "depend on employees receiving accurate and timely notice concerning the pendency of the collective action" and holding that courts have "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure").

<u>Gordon</u>, 134 F. Supp. 3d at 1039–40. The court then endorsed this criticism and held

that it would not require the plaintiffs in that case to demonstrate putative class

members' interest in the litigation.

As for the <u>Pelczynski</u> decision and defendants' suggestion that the interest

requirement is now recognized in this jurisdiction, the court found that "the weight of

precedent in this circuit is decisively against" such a requirement. <u>Id.</u> at 1040. The

court squarely addressed the <u>Pelczynski</u> decision, noting that it appeared to be the

only decision in this circuit imposing the interest requirement and that the citation it offered to support that position was flawed.  Gordon, 134 F. Supp. 3d at 1040 n.11.

Defendants have offered little to disturb the conclusion this court reached in Gordon.   They do identify a second decision from a court in this circuit that appears to support the interest requirement, D'Anna v. M/A-COM, Inc., 903 F. Supp. 889, 893–94 (D. Md. 1995), which expressed concern over the dangers of "unwarranted solicitation" and "frivolous fishing expedition[s]" and concluded that "the better reasoned cases require the plaintiff to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists."  Even assuming the D'Anna decision supports the sort of interest requirement defendants seek to impose here,[10] the court remains convinced that imposing such a requirement is neither the majority position, see Gordon, 134 F. Supp. 3d at 1040 (collecting cases), nor the logical position.[11]  Id. (rejecting interest requirement due, in part, to substantive criticism

---

[10] How much support D'Anna provides for defendants' argument is quite debatable, given that D'Anna explicitly requires a factual showing of the class's existence, as opposed to interest among the class members.  903 F. Supp. 893–94.  D'Anna also regards this factual showing as "modest."  Id. at 894.  Indeed, it is not even clear whether D'Anna requires this showing to be made with evidence or simply on the pleadings.  Id. (noting that "plaintiff has not pointed to any company plan or policy").

[11] Defendants also attempt to distinguish Gordon based on language in a footnote, which reads in full:

> Notably, the Parker court stated: "It goes without saying that this analysis applies only when there are one or two named plaintiffs.  If, for example, eight employees together were to commence an FLSA action, it might be unnecessary to show that others desire to opt in to the litigation, since the sheer number of plaintiffs, standing alone, could render the case 'appropriate' for collective-action status."  Parker, 492 F.Supp.2d 1165 n.4.  The Parker court declined to draw a "precise numerical line" as to when the analysis should apply, and recognized line drawing problems inherent in its rationale.  Id.  For

outlined in <u>Helmert</u>, 2009 WL 5066759, at \*5, and <u>Heckler</u>, 502 F. Supp. 2d at 777).

Therefore, the court finds that plaintiffs are entitled to conditional class certification.

---

what it's worth, the number of named plaintiffs in this case, six, is closer to eight than two.

<u>Gordon</u>, 134 F. Supp. 3d at 1027. Defendants appear convinced that the court's statement that "[f]or what it's worth, the number of named plaintiffs in this case, six, is closer to eight than two" is sufficient to distinguish this case from <u>Gordon</u>. When the <u>Gordon</u> decision is read in full, it is clear that the cited language was only included to note that, even if the interest requirement applied, the <u>Gordon</u> plaintiffs would likely have satisfied that requirement. However, as the phrase "[f]or what it's worth" suggests, it is clear that the court's holding rested on its outright rejection of the interest requirement.

## IV.   CONCLUSION

For the foregoing reasons, the court **GRANTS** in part and **DENIES** in part defendants' motion to dismiss, and **DISMISSES** plaintiffs' IRC claim without prejudice.  The court **GRANTS** plaintiffs' motion for conditional certification.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**December 21, 2016**
**Charleston, South Carolina**